IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TAMARA AVERBECK,

                    Plaintiff,

          v.                                                    OPINION and ORDER

THE LINCOLN NATIONAL LIFE INSURANCE                             20-cv-420-jdp
COMPANY and DOES 1 THROUGH 10, INCLUSIVE,

                    Defendants.

---

Plaintiff Tamara Averbeck brought this lawsuit under the Employee Retirement Income Security Act (ERISA) after defendant The Lincoln National Life Insurance Company terminated her long term disability and life insurance benefits and denied her appeal. Four months after Averbeck filed suit, Lincoln reinstated her benefits, including the back benefits. In a previous order, the court determined that Averbeck was entitled to recover her reasonable actual attorney fees, expenses, and costs because she had obtained some degree of success on the merits and Lincoln hadn't shown that its position was substantially justified. Dkt. 32. The court authorized Averbeck to submit either a stipulation or a properly-supported fee request, noting that Averbeck's fees "should be relatively modest." *Id*. at 3.

Averbeck's fee petition is now before the court. Dkt. 34. It is not relatively modest; it is eye-popping. Averbeck seeks an award of $160,764 for 316 hours of work leading up to and including her fee petition, plus another $20,010 for time spent on the reply, for a total fee award of $180,774. Dkt. 47. She also seeks costs in the amount of $2,984.65. Dkt. 35-5, at 2. Not surprisingly, Lincoln contends that the amount requested by Averbeck is unreasonable. The court agrees. Accordingly, for the reasons set out below, the court is awarding fees in the

amount of $69,725. Averbeck's request for costs is not properly supported, so those will be denied.

## ANALYSIS

Under ERISA, a court has discretion to award a "reasonable attorney fee and costs of action to either party." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wisconsin, Inc.*, 657 F.3d 496, 505 (7th Cir. 2011) (quoting 29 U.S.C. § 1132(g)(1)). In determining a reasonable fee, the court begins by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court may then adjust this "lodestar" figure to account for various factors such as the amount involved, the results obtained, or the novelty of the questions presented. *Id*. at 434 n. 9 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)). In assessing reasonableness, the court's goal "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*.

### A. Hours expended

The court first addresses the hours that Averbeck's attorneys expended litigating this case, deducting hours that are excessive, redundant or otherwise unnecessary, or that were incurred in unrelated, unsuccessful claims. *Hensley*, 461 U.S. at 434–35. Fees that would not be billed to a paying client will not be shifted to the opposing party in a fee award. *Id*.; *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) ("[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.").

2

Averbeck seeks an award of attorney fees for the following work performed by attorneys with the McKennon Law Group: 102.5 hours by Robert McKennon, a shareholder; 142.7 hours by Amber Dufault, an associate with 13 years' experience who left the firm around February 2021; and 106.4 hours by Cory Salisbury, an associate with eight years of experience who replaced Dufault.[1] Dkt. 51-1. In addition, Averbeck seeks reimbursement from Lincoln for 4.3 hours of work performed by Alfred Fisicaro, an "experienced word processor." Dkt. 35, ¶ 11 (McKennon Decl.) (describing Fisicaro's role). Averbeck supported her fee request with declarations and a chronological, itemized billing statement from her attorneys, Dkt. 35-4; however, she later updated the billing statement with a coded statement that groups the entries according to assigned categories of tasks. Dkt. 47-1. Lincoln has also submitted its own coded spreadsheet, Dkt. 41-3, along with a summary of its objections and proposed reductions. Dkt. 43-2.

Lincoln objects to Averbeck's counsel's fee calculation on several grounds, both general and specific. Generally, it argues that the requested fee is excessive in comparison with other ERISA disability benefits cases, is vastly disproportional to Averbeck's recovery of $27,500 in back benefits, and reflects a lack of reasonable billing judgment by counsel. Specifically, defendant complains about the time spent on the following tasks: 78.9 hours drafting the complaint; 47.8 hours reviewing the administrative record; 55.1 hours responding to the court's order to show cause; 45.1 hours drafting the motion for fees; and for time spent on administrative tasks and non-litigation work.

---

[1] These amounts include 39.4 hours spent on the reply brief. *See* Dkt. 47, ¶3 (Salisbury Decl.).

Before addressing Lincoln's specific objections, the court agrees with its general observation that 316 hours far exceeds what courts have deemed reasonably necessary to litigate similar ERISA disability benefits cases.[2] ERISA cases are fact-intensive, but Averbeck's was not overly complicated, and she does not suggest that her case presented any unique legal or procedural issues. Rather, like many ERISA disability benefit cases, the main issues were whether the claims administrator properly relied on its peer reviewing physicians over plaintiff's treating physicians, whether it considered all of the evidence in support of plaintiff's claim, and whether it provided plaintiff with the full and fair review required under the statute. *See* Dkt. 1 (Complaint). All of these are routine issues in ERISA cases with which Averbeck's attorneys,

---

[2] *See, e.g., Alberth v. Southern Lakes Plumbing & Heating, Inc.,* No. 19-CV-62, 2021 WL 2779038, at *5 (E.D. Wis. July 2, 2021). (139.5 hours including summary judgment, trial, and post-trial briefing); *Laux v. Am Axle & Mfg. Inc.,* No. 20-C-270, 2021 WL 1311430 (E.D. Wis. April 8, 2021) (90.9 hours for litigation through dispositive motions); *Mowery v. Metro. Life Ins. Co.,* No. 16-CV-516-JDP, 2017 WL 3575857, at *4 (W.D. Wis. Aug. 18, 2017) (concluding that 36.5 hours drafting complaint, 182 hours briefing summary judgment and 29.5 hours drafting motion for fees were "on the very high end of those awarded—or even asked for—in similar ERISA cases" and reducing hours billed in each category by one-quarter); *Clark v. Cuna Mutual Long Term Disability Plan,* 14-cv-412-wmc (W.D. Wis. Dec. 23, 2016) (awarding fees for 161.95 hours of work for litigating case through summary judgment); *Kaiser v. United of Omaha Life Ins. Co.,* No. 14-cv-762, 2016 WL 6581355, at *2 (W.D. Wis. Nov. 4, 2016) (approving 19 hours drafting a complaint and 92 hours briefing summary judgment motions as reasonable); *Boxell v. Plan for Grp. Ins. of Verizon Comm'ns, Inc.,* No. 13-cv-89, 2015 WL 4464147, at *7 (N.D. Ind. July 21, 2015) (approving 19.2 hours for "preliminary work," 91.9 hours briefing summary judgment motions, and 33.6 hours briefing cross-motions for attorney fees as reasonable); *Holoubek v. Unum Life Ins. Co.,* No. 06-cv-121, 2007 WL 5595900, at *3 (W.D. Wis. Jan. 26, 2007) (approving 17.4 hours drafting a complaint as reasonable but concluding that 113.1 hours briefing summary judgment were excessive); *Hannon v. Unum Life Ins. Co.,* No. 12-cv-992, 2014 WL 4653058, at *3 (S.D. Ind. Aug. 6, 2014) (concluding that 21.7 hours briefing a seven-page, boilerplate fees motion were excessive); *Hartman v. Dana Holding Corp.,* No. 12-cv-445, 2013 WL 6800112, at *5 (N.D. Ind. Dec. 20, 2013) (concluding that 27.2 hours drafting a complaint, 113.5 hours briefing summary judgment, and 47.6 hours briefing a fees motion were excessive).

who specialize in ERISA litigation, would be well-acquainted. All of this is on top of the fact that the parties settled Averbeck's claim before dispositive motions were even filed.

What is more, the lion's share of the time that Averbeck's counsel spent on this case was related to recovering their own fees. As discussed below, counsel could have eliminated much of this work by filing a streamlined motion for attorney fees in late 2020, as it told Lincoln and this court that it would do, rather than litigating their fee motion in stages. Although Averbeck proffers innocent reasons for its litigation conduct, the court isn't persuaded by them. Instead, the court is left with the sense that counsel intentionally dragged their feet to prolong the case and drive up their fees. Accordingly, the court approaches counsel's time records with a skeptical eye, wary of overbilling. *See Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (fee request that is disproportionate to complexity of the case can raise a red flag). The following are the court's rulings on defendant's objections, using the chart prepared by defendant, Dkt. 43-2, as guidance.[3]

### 1. Reviewing the administrative record

Averbeck's attorneys spent 47 hours reviewing the 1,665-page administrative record, reviewing prior counsel's file in connection with the administrative proceedings, and summarizing Averbeck's medical records. This was excessive and reflects a lack of reasonable billing judgment. Averbeck doesn't deny that, like most ERISA files, the administrative record for her claim contained many repeat records and correspondence, fax transmittal pages, and

---

[3] The court finds Lincoln's summary more helpful than Averbeck's because it includes columns showing the total amount of time spent by each of her attorneys in each contested category of work. Dkt. 43-2. Although Averbeck's coded spreadsheet and accompanying summary uses slightly different categories, the court finds Lincoln's calculation of the amount of time in each category and for each timekeeper to be accurate and roughly consistent with Averbeck's.

cover sheets that require no time to review. Counsel also had the benefit of prior counsel's file and Averbeck's administrative appeal, which would have helped identify the pertinent issues for appeal.

In addition, counsel over-litigated the case by performing duplicative and unnecessary work. On November 21, 2019, for example, Attorney Dufault spent 6.1 hours creating a document index and saving important documents from the record, and on November 22 and 25, she spent a total of 12 hours summarizing Averbeck's medical records. Dkt. 47-1, at 2. This work might have been reasonable if it saved counsel time later, but it didn't: as discussed below, Averbeck's attorneys still spent nearly 80 hours drafting and revising the complaint.

Counsel's billing records also show duplication of effort by Dufault and McKennon: Dufault billed 28.8 hours reviewing the administrative record, and McKennon billed an additional 16.9 hours. Averbeck's counsel hasn't explained why it was reasonable or necessary to have two lawyers review the administrative record, or why McKennon spent nearly 17 hours on that task when it was Dufault who drafted the complaint. *See Schlacher v. L. Offs. of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) ("[O]verstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.").

Accounting for all these factors, the court finds it appropriate to reduce the time spent on this task by two-thirds, to 16 hours.

## 2.  Preparing the complaint

Averbeck's lawyers spent 62.4 hours drafting and revising the complaint, plus an additional 16.5 hours reviewing Averbeck's medical records and performing legal research, for a grand total of 78.9 hours preparing the complaint. Once again, this amount is excessive,

vastly exceeds what other attorneys typically bill for drafting an ERISA complaint, and does not reflect a reasonable exercise of billing judgment.

Averbeck's complaint was lengthy (31 pages) and detailed, reading more like proposed findings of fact than a standard ERISA complaint. Perhaps its length and detail are what spurred Lincoln's decision to reinstate Averbeck's benefits. Even so, the court agrees with Lincoln that spending 78.9 hours—nearly two full weeks—drafting a complaint that contained a single claim for relief far exceeded the needs of this straightforward case. What is more, experienced lawyers like Averbeck's counsel should have been able to prepare it in far less time. Finally, the billing records again suggest inefficient and unnecessary duplication of work by McKennon and Dufault:  Dufault billed 5.7 hours reviewing and revising the complaint and McKennon billed another 12.2 hours to that same task. *See* Dkt. 47-1, at 9 (entries from February 5, 2020 to April 17, 2020).

The court will again reduce the amount charged by counsel by two-thirds; 26 hours was a reasonable amount of time for experienced counsel like Averback's to spend on preparing the complaint.

### 3.  Motion for attorney fees

Averbeck's attorneys spent a total of 46 hours on the motion for attorney fees, including performing legal research and drafting supporting declarations and exhibits.[4] Lincoln argues

---

[4] In her brief, Averbeck asserts that her lawyers spent 24.9 on these tasks. But as her counsel admits in his declaration, the total reflected on Averbeck's "Total Hours Expended" summary, Dkt. 36-1, did not include 14.1 hours of time spent performing research related to the motion for attorney fees, which had been erroneously captured in the "RS" category. Dkt. 47, ¶ 2. In addition, from its independent review, the court finds another 7 hours of work performed by Salisbury coded "RS" that pertained to the motion for attorney fees. Dkt. 47-1, at 13 (entries from April 12 to August 2, 2021). This brings the total to 46, which is close to Lincoln's calculation of 45.1.

that this amount of time is unreasonable given that counsel had already devoted 11.3 hours (by Lincoln's calculation) to analyzing and researching their fee request in connection with their settlement negotiations with Lincoln. It also points out that courts in this circuit and elsewhere have found that experienced counsel like Averbeck's could file a fee motion in far less time. Finally, it asserts that the work on the fee motion was excessive because it included arguments concerning entitlement to fees, which the court had already decided in Averbeck's favor. Lincoln proposes reducing the time awarded in this category to 10 hours.

The court agrees that the hours billed by Averbeck's counsel are unreasonable, but for reasons slightly different than argued by Lincoln. Primarily, the court finds from counsel's billing records that their delay in filing the motion led to duplication of effort and unnecessary work. In November and December 2020, for example, McKennon and Dufault spent about 10 hours doing preliminary work on the motion, including "gathering evidence," "outlining arguments," "planning work and evidence," and conducting legal research. Dkt. 35-4, at 10-11. But this time appears to have been largely wasted: no motion was drafted, much less filed, at that time.

Instead, from March to June 2021, after Dufault left, Salisbury retraced her steps, spending about 4 hours reviewing the file and "strategizing" for the motion. He began drafting the motion on June 11, spending 15.6 hours from June 11 to June 16, 2021. McKennon spent 2.9 hours revising the motion and the supporting declarations on June 29, 2021. About a month later, on August 2, 2021, Salisbury spent another 1.7 hours "strategizing," revising and editing the declarations. But again, Averbeck didn't file the motion. She did not file it until more than a year later, after the court found that she was eligible to recover her fees under controlling legal standards. After the court's ruling, counsel spent an additional 7.7 hours on

the motion, including 2.9 hours "analyzing" the court's order and "strategizing" the fee motion, and 4.8 more hours of editing and revising. Dkt. 47-1, at 11 (entries from September 1 to September 26, 2022); *id*. at 14 (entries on August 30, 2022).

Averbeck insists that she delayed filing a motion for attorney fees to avoid spending "unnecessary time" on such a motion until she knew the outcome of Lincoln's dismissal motion.[5] Dkt. 46, at 39. But this is inconsistent with her prior representation in this case—which is supported by counsel's billing records—that "most of the work for the [attorney fee] motion was done prior to September 30, 2021," when the court ruled on the motion to dismiss. Dkt. 28, at 30. Averbeck also says that she didn't want to be "presumptuous" in filing a motion for fees before the court ruled that she was entitled to them. But Averbeck's attorneys are experienced ERISA litigators who would know that the threshold question of whether a party is eligible to recover fees under 29 U.S.C. § 1132(g)(1) is typically raised by the plaintiff in a motion for attorney fees; indeed, their own submissions show that the McKennon firm has filed such motions. *See Harmon v. Aetna*, Case No. CV 13-06880 (C.D. Cal. Oct. 14, 2014) (attached to McKennon Decl., Dkt. 35, Exh. 1.). Counsel's shifting and flimsy explanations for their litigation conduct heightens the court's concerns about overbilling.

Moreover, even after the court denied Lincoln's motion and ordered Averbeck to show cause why the case should not be dismissed without payment of her attorney fees, she still didn't submit a "complete" motion, opting instead to argue only the issue of entitlement to

---

[5] Contrary to Averbeck's assertion, Lincoln's dismissal motion was not frivolous: *someone* had to get the case resolved once the parties could not agree on Averbeck's requested attorney's fees, and Lincoln likely and justifiably was concerned about fees continuing to increase the longer the case remained open. Lincoln was not required to wait indefinitely, with the meter running, until Averbeck's lawyers got around to filing the motion for attorney fees that they repeatedly said was forthcoming but never actually filed.

fees. This led to another court order, more "analysis" by counsel, and yet more time spent on the fee motion. It is not fair to require Lincoln to shoulder the increased costs that resulted from Averbeck's halting, piecemeal approach to recovering her attorney fees.

Taking all of this into consideration, the court finds that counsel could reasonably have prepared their fee petition in 15 hours. Hours billed over that amount reflect unnecessary and duplicative work.

### 4. Responding to court's order to show cause

Averbeck's counsel billed 55.1 hours related to this court's September 30, 2021, order, in which the court denied Lincoln's motion to dismiss the case as moot and directed Averbeck to show cause why the case should not be dismissed without payment of her attorney fees. Dkt. 24. Lincoln objects to paying any of those fees, on the ground that the order was prompted by Averbeck's counsel's failure to advance the case by filing a timely motion for attorney's fees.

The court agrees that Averbeck's clumsy and inefficient handling of the attorney's fees issue resulted in duplication of effort and increased fees. But the court overrules Lincoln's blanket objection to this category. Averbeck's response to the court's order was essentially a partial motion for attorney fees, work that her attorneys would have done regardless of *when* she filed the motion.

Even so, 55.1 hours was excessive. Averbeck's counsel's billing records show that by that stage in the case, counsel had already spent significant time "strategizing" and "performing research" regarding attorney fees, including in connection with their settlement demand. In fact, counsel's billing records indicate that they already had a nearly-complete motion for attorney fees drafted, which presumably addressed the same issue of entitlement to fees that

10

was the focus of the response to the order to show cause.[6] In addition, counsel had previously argued in favor of a fee award in response to the motion to dismiss.

Counsel's billing entries are not detailed enough to show that that this prior work was not relevant to the response to the order to show cause. Given that Averbeck's entitlement to attorney fees was essentially the *only* live issue in the case after Lincoln reinstated her benefits, it is fair to conclude that much of the groundwork and legal research for the response to the order to show cause had already been done before counsel began drafting it. Further, as experienced ERISA litigators, none of these issues would have been new to counsel. Given their documented prior work in this case concerning attorney fees and their experience handling such motions, counsel ought to have been able to prepare their response in far less than 55 hours. The court will cut the fee request for this work by two-thirds, to 18 hours.

### 5. Administrative tasks

Lincoln objects to 5.3 hours of time spent on what it characterizes as non-compensable administrative tasks, including assessing the status of service and *pro hac vice* motions, scheduling dates into a calendaring system, and similar tasks. Averbeck concedes that Lincoln's objections are proper except for one entry: 3.5 hours billed at the rate of $120 by Alfred Fisicaro, an "experienced word processor," who "review[ed] and edit[ed]" the complaint. *See* Dkt. 47-1, at 9, January 31, 2020 entry for "AF"; Dkt. 35, ¶ 11 (McKennon Decl.) (describing Fisicaro's role). (Fisicaro also billed 0.7 hours reviewing and editing Averbeck's opposition to the motion to dismiss.) Although it might be appropriate to charge a paying client for word-processing services like Fisicaro's, the court finds that expense unreasonable and unnecessary

---

[6] In fact, the motion that Averbeck ultimately submitted contains a section addressing her entitlement to fees. Dkt. 34-1, at 8-11.

in this case. The complaint and opposition to the motion to dismiss both were further revised after Fisicaro worked on them. Moreover, given the massive number of hours charged by counsel for their work in this case, Averbeck's inclusion of Fisicaro's fee demonstrates a lack of reasonable billing judgment.

### 6. Preparing and reviewing *pro hac vice* applications

The court agrees with Lincoln that filing one-page *pro hac vice* motions are routine filings that are non-compensable. *Accord Reid v. Unilever United States, Inc.*, No. 12 C 6058, 2015 WL 3653318, at *10 (N.D. Ill. June 10, 2015) (noting completing one-page form document required little effort and qualified as routine filing that was non-compensable), *aff'd sub nom. Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016). The court will subtract this time (3.4 hours) from the fee request.

### 7. Non-litigation work

Lincoln objects to 6.2 hours spent on what Lincoln characterizes as "logistical" administrative tasks concerning Lincoln's reinstatement of Averbecks's benefits. *See* Dkt. 41–3, entries coded as "Reinstatement Logistical Task." Lincoln argues that these tasks were clerical in nature and didn't require any attorney input. Having reviewed the objectionable entries, the court disagrees. The tasks were the kinds of ordinary follow-up routinely performed by counsel to ensure that their client's rights are protected and that the other side is complying with its obligations. Lincoln's objection to this category of work is overruled.

Lincoln also objects to 3.3 hours that Dufault billed for planning for and then contacting Averbeck's treating physician, on the ground that any information provided by the doctor would be outside the administrative record and unreviewable by the court. Averbeck's counsel responds that speaking with Averbeck's treating physician was a necessary part of their

case investigation. It is reasonable for a lawyer to communicate with her client's treating physician in an ERISA case involving denial of disability benefits, but the time Dufault spent on that task here was excessive. The court finds that one hour would have been sufficient, and that any amounts billed above that were unnecessary.

### 8. Reply brief

Finally, Lincoln objected in advance to the court awarding Averbeck any fees for work on a reply to this motion, on the ground that the court had not authorized her to file one. But Averbeck later obtained that authorization and filed a reply brief. *See* Dkt. 45. She seeks an additional $20,010 in attorney fees for 39.4 hours of work; 22.4 hours by Salisbury and 17 hours by McKennon. Once again, this is on the high side and reflects duplication of effort. Averbeck hasn't supported her request with an itemized billing statement from her attorneys that might show why an experienced associate and a partner both had to spend as much time as they did on the brief. Although the court recognizes that Averbeck was entitled to respond to Lincoln's objections, it was not reasonable to charge another 40 hours to the case, particularly after the court expressed its view that fees ought to be "modest." Accordingly, the court will reduce the time spent on the reply to 30 hours.

### 9. Hours calculation

The court's reductions total 172 hours. To account for the fact that different lawyers with different rates worked on Averbeck's case, the court will distribute the reductions proportionally, as proposed by defendant. *See* Dkt. 41–4. The court finds that approximately 41 percent of the objectionable hours were performed by Dufault, 27 percent by McKennon, and 32 percent by Salisbury. After multiplying these percentages by the total reduction of 172

hours and then subtracting this product from each attorney's total hours, the court finds the following hours to have been reasonably expended on this case:

| Timekeeper | Total Billed | Percentage of Objectionable Hours | Reduction | Reasonable Hours |
|---|---|---|---|---|
| Dufault | 142.7 | 41% | 70.5 | 72.2 |
| McKennon | 102.5 | 27 | 46.4 | 56.1 |
| Salisbury | 106.4 | 32 | 55.0 | 51.4 |

## B. Rates

Next, the court must determine whether the hourly rates are reasonable. The hourly rates plaintiff seeks include $650.00 for Attorney McKennon; $500.00 for Attorney Dufault; and $400.00 for Attorney Salisbury. The Seventh Circuit "define[s] a reasonable hourly rate as one that is 'derived from the market rate for the services rendered' [and] presume[s] that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). "[O]nce an attorney provides evidence establishing [the] market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). Averbeck bears the burden of establishing the market rate; if she fails to carry that burden, the court can independently determine the appropriate rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

Averbeck's motion is supported by declarations from her attorneys and by evidence of fees awarded by district courts in California, where the McKennon firm is located. Dkt. 35–37. The declarations provide sufficient evidence of the experience of the attorneys who worked on the case and state that the requested hourly rates sought are $50–$100 lower than the actual

14

rates counsel use in hourly fee arrangements. *Id*. at ¶33. The best evidence "of an attorney's market rate is his or her actual billing rate for similar work." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012) (citing *Pickett*, 664 F.3d at 639–40). Averbeck also submitted a declaration from Attorney Glenn Kantor showing that the requested rates are in line with what other practitioners normally charge for similar services in California. Dkt. 38. Averbeck's evidence is sufficient to establish that the rates sought by her attorneys in this case are the rates they command in the California market from paying clients for similar work.

Defendant argues that the rates in California are higher than in Wisconsin, and it asks the court to exercise its discretion and allow only an hourly rate that a Wisconsin attorney would have charged for the same service. The court shouldn't reduce the hourly rate of an out-of-town attorney just because it is higher than the rate of a local attorney. *Mathur v. Bd. of Trustees of Southern Ill. University*, 317 F.3d 738, 743-44 (7th Cir. 2003); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993). But it can make such a reduction if there are local attorneys who perform the same work just as well at lower rates. *Chrapliwy v. Uniroyal Inc.*, 670 F.2d 760, 768 (7th Cir. 1982). *See also Mathur*, 317 F.3d at 744 (where "there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were rendered," then the judge may modify the out-of-town attorney's rate). As defendant points out, there are numerous Wisconsin-based attorneys who competently litigate ERISA benefits cases, including plaintiff's local counsel, Hawks Quindel, which has handled 63 such cases in the past five years. Ng Dec., Dkt. 43, ¶¶22–24; *see also* cases cited at Dkt. 41, at 25–26.

Averbeck hasn't shown that experienced ERISA attorneys in Wisconsin were unavailable to handle her case. Instead, she responds that her attorneys already reduced their

15

rates to account for the difference between the California and Wisconsin local markets. But Averbeck has not offered any evidence that even the reduced rates sought by her attorneys are consistent with market rates in Wisconsin, even though she has local counsel who could easily have provided that evidence. Averbeck points out that her attorneys have been awarded even higher rates in some cases, but again, those were in California. Simply because the rates sought in this case are on the low end of the rates awarded in California does not show that those rates are in line with the rates charged by Wisconsin attorneys who handle ERISA disability cases.

Courts in this district have found that hourly rates ranging from around $300 for associates to $450 for shareholders are reasonable market rates for litigating ERISA benefit cases in Wisconsin. *Alberth v. S. Lakes Plumbing & Heating, Inc.*, No. 19-CV-62, 2021 WL 2779038, at *5 (E.D. Wis. July 2, 2021) (finding hourly rate of $450 for attorney with 32 years of experience was reasonable and in line with those prevailing in the community); *Laux v. Am. Axle & Mfg. Inc.*, No. 20-C-270, 2021 WL 1311430, at *2 (E.D. Wis. Apr. 8, 2021) (approving $400 for shareholder Danielle M. Schroder and $300 for fifth-year associate Attorney Jessa L. Victor); *Mowery v. Metro. Life Ins. Co.*, No. 16-CV-516-JDP, 2017 WL 3575857, at *2 (W.D. Wis. Aug. 18, 2017) (approving market rates of $280 per hour and $450 per hour for attorneys with nine and 25 years of experience, respectively). Averbeck has not presented any evidence showing that ERISA attorneys in Wisconsin command higher rates. Accordingly, the court finds that the following hourly rates are reasonable in this case: $450 for McKennon; $400 for Dufault; and $300 for Salisbury.

## C.  Lodestar calculation

Multiplying these rates by the reasonable hours above, the court calculates the lodestar as follows:

| Timekeeper | Hours | Hourly Rate | Fee |
|------------|-------|-------------|-----|
| Dufault | 72.2 | $400 | $28,880 |
| McKennon | 56.1 | 450 | 25,245 |
| Salisbury | 51.4 | 300 | 15,420 |
| | | | **Total**: $69,725 |

Although the court has discretion to reduce the lodestar based a variety of factors, including the time and labor required, awards in similar cases, and the amount involved and the results obtained, *see Hensley*, 461 U.S. at 434 & n.3, the court declines to do so because the reduction of hours adequately addresses these factors. So the court will award Averbeck $69,725 in attorney fees.

## D. Costs

Averbeck seeks $2,984.65 in costs, $1,840 of which are outside professional fees charged to the McKennon firm by local counsel. Dkt. 35-5. But Averbeck hasn't supported this request with billing statements or records accounting for the hours expended or the work performed by local counsel. The party seeking an award of fees must submit evidence supporting the hours worked and rates claimed. *Hensley*, 461 U.S. at 433. Absent supporting documentation, the court denies this request.

The court will cut the $944.65 in online legal research fees, too, even though defendant does not object to this amount. Costs for online legal research are recoverable only as part of an award of attorney fees, not as costs. *See Haroco, Inc. v. Am. Nat'l Bank & Tr. Co.*, 38 F.3d 1429, 1440–41 (7th Cir. 1994). But the court will not include this amount as part of the attorney fee award because there is nothing in the record showing that Averbeck's counsel consistently charged this expense to Averbeck. *See Mowery v. Metro. Life Ins. Co.*, No. 16-CV-

17

516-JDP, 2017 WL 3575857, at *2 (W.D. Wis. Aug. 18, 2017) (declining to shift fees for legal research to defendant absent evidence that plaintiff was being billed regularly for legal research fees, noting that many firms include costs of legal research as part of overhead, which is reflected in hourly rate).

## ORDER

IT IS ORDERED that:

1. Plaintiff Tamara Averbeck's motion for attorney fees and costs, Dkt. 34, is GRANTED in part and DENIED in part, as explained above.

2. Plaintiff is awarded attorney fees in the total amount of $69,725. No costs shall be awarded.

3. The clerk is directed to enter judgment to reflect the award of attorney fees.

Entered September 28, 2023.

BY THE COURT:

/s/
_____

JAMES D. PETERSON
District Judge